# EXHIBIT A

#8/A

IN THE UNITED STATES PATENT AND TRADEMARK OFFICE

In re the Application of )
)
GUSTMAN, S. ) Examiner:  MIZRAHI, D.
)
Serial No:  08/678,727 ) Group Art Unit:  2771
)
Filed:  July 10, 1996 )
)
For:  METHOD AND APPARATUS FOR )
MANAGEMENT OF MULTIMEDIA )
ASSETS )
)

AMENDMENT AND RESPONSE

Assistant Commissioner for Patents
Washington, D.C. 20231

Sir:

This is in response to the outstanding Examiner's Action in the present

application.  Please amend the present application as follows:

IN THE SPECIFICATION

At page 13, line 5, please delete "associated ID" and insert --associated

identifier (ID)-- in place thereof.

At page 22, line 20, please delete "MPEG" and insert --Moving Pictures

Experts Group (MPEG)--.



<u>REMARKS</u>

Claims 1-14 and 17-36 are pending in the present application.  Claims 15-16 are subject to restriction.  The Examiner has rejected Claims 1-14 and 17-36.  Applicant has amended Claims 1, 17, 18 and 23.  Reexamination and reconsideration of pending Claims 1-14 and 17-36 is respectfully requested.

<u>Examiner Interview</u>

In a telephonic interview, the Examiner indicated that a first group of claims (i.e., Claims 1-14 and 13-36) were considered to be within the 395/615 classification and a second group (i.e., Claims 15-16) were within the 395/285 classification.  The Examiner requested Applicant to elect group one or group two for examination.  Applicant elected Claims 1-14 and 13-36 (group one) for examination.

<u>Drawings</u>

The Examiner states that the application has been filed with informal drawings.  The Examiner states that:

> "[t]he application having been allowed, formal drawings are required in response to this Office Action."

Claims 1-14 and 17-36 are pending and not allowed by the Examiner.  Applicant will submit formal drawings upon allowance of the Claims in the Patent Application.

84300.914                             17

Specification

The Eaminer objects to the specification stating:

"(a)  The disclosure has terms "IDs" on page 83 (Claim 1) is not properly defined as required for acronyms.  Acronyms must be defined at their first usage in the disclosure.  The entire disclosure should be checked for proper usage of acronyms.  Appropriate correction is required.

"(b)  The serial number (i.e., 'Serial No. _____') (page 23, line 8) has been omitted.  Serial number should read 08/680,504.  Appropriate correction is required."

Applicant has amended the Specification and Claim 13 accordingly.

Rejection of Claims 1-2 and 23-24 based on 35 U.S.C § 102(b)

The Examiner states that Claims 1-2 and 23-24 are rejected under 35 U.S.C. 102(b) as being anticipated by Braden-Harder et al. (U. S. Patent No. 5,630,121), Archiving and Retrieving Multimedia Objects Using Structured Indexes.

Regarding Claims 1-2 and 23-24, the Examiner states that Braden-Harder teaches accessing multimedia data comprising defining a catalogue for multimedia data having a plurality of catalogue elements (the Examiner equating a catalogue element to a matched pair) each associated with a portion of multimedia data (citing the Abstract), specifying a search (citing col. 2, lines 38-44); identifying a result of a search request that satisfies

the search request containing one or more catalogue elements (citing Figure 4, #450); retrieving a portion of multimedia data associated with one or more catalogue elements (citing Figure 1); and storing a search request (citing Figure 2, #298); and storing the search result (citing Figure 5, #540).

Applicant disagrees.  Applicant believes that Claims 1-2 and 23-24 are not anticipated by Braden-Harder.  Applicant believes that Braden-Harder does not teach, suggest or describe the claimed invention for at least the following reasons:

1. *In contrast to the claimed invention, Braden-Harder describes an archival and retrieval of multimedia data using an index whose structure is based on grammatical relationships;*

2. *Braden-Harder teaches that the structure created from grammatical relationships is essential to archiving and retrieving multimedia data;*

3. *In contrast to the claimed invention, Braden-Harder teaches a matched pair that contains an index whose structure is based on grammatical relationships; and*

4. *Braden-Harder does not teach, suggest or describe storing said search request or search result in a catalogue as in the claimed invention.*

Applicant provides the following discussion of these reasons:

1. <u>In contrast to the claimed invention, Braden-Harder describes an archival and retrieval of multimedia data using an index whose structure is based on grammatical relationships.</u>

According to Braden-Harder, a structured (simple or compound) index is structured because it identifies a relation and a function (col. 4, lines 22-24). The relation and function are determined using rules of grammar (col. 4, lines 24-25). That is, Braden-Harder creates grammatical relations and grammatical functions to form its structured index.

The examples of grammatical relations given in Braden-Harder are: *action*, *agent*, *object* or *location*. According to Braden-Harder, a function identifies a grammatical part-of-speech. For example, an action relation has a *verb* function, and a agent relation has a *noun* function. According to the rules of grammar, an *action* component is related to an *agent* component in that, for example, an *agent* can be performing the *action*.

According to Braden-Harder (at col. 5, lines 18-29):

"Grammar is a set of rules which gives components in a sequence a function and relationship, i.e., a structure. The rules of grammar organize and/or identify the components in a sequence in such a way to give them specific functions. For example, the grammar used in the preferred embodiment is a natural language grammar of English, which has subjects (nouns and noun phrases), predicates (verbs), and objects (nouns, noun phrases, prepositional phrases, etc.) arranged in a sequence determined by grammatical rules to create a phrase or sentence. Altering the function and relationship of the words according to the grammatical rules can change the meaning of the word phrase or sentence."

84300.914                    20

Braden-Harder provides the following example for applying a set of grammatical rules to the input "Dad will fall into a pool" yields a function (i.e., part of speech) for the word *Dad* of *noun* and an *agent* relationship to the other words in the input (col. 5, lines 1-4).   According to Braden-Harder (at col. 1, lines 40-45):

> "Functionally, [Dad] and "pool" are nouns and "fall" is a verb.
> Relationships exist because, syntactically, [Dad] is the subject of the
> sentence, and, semantically, it is the theme of an action; "fall" is the
> predicate which describes the action; and "pool", according to the English
> syntax, the locational object of the sentence, describes the location of the
> action. "

While Braden-Harder states that rule sets other than a grammatical rule set can be used, Braden-Harder does not define what a relationship or function is for those other rule sets.  Braden-Harder states that the other rules that can be used to define the structure of a structured index are: rules concerning rhythm and frequency of a series of tones in a musical clip (col. 4, lines 35-44); rules concerning the frequency, number and order of tones in a phone number (col. 4, lines 35-44); and rules of music (i.e., sequence of frequency tones to create a melody), geometry (i.e., sequence of patterns to create a shape), and speech (i.e., sequence of phonemes to create a recognizable word) (col. 5, lines 44-51).

Braden-Harder does not describe the content of a structure index for those other rules sets.  That is, Braden-Harder does not provide a disclosure

that enables one to create a structured index with relations and functions using rules other than rules of grammar. Thus, Braden-Harder only describes a structured index that defines relations using a set of grammatical rules.

Braden-Harder relates words in an input phrase via grammatical relationships. Braden-Harder does not describe a method of cataloguing multimedia data wherein a catalogue element of a multimedia catalogue is related to a plurality of keywords interrelated by one or more of associative, whole-part and inheritance relationships. Braden-Harder teaches a structure created from and consisting of grammatical relationships.

In contrast, the claimed invention is directed to a method of accessing multimedia data wherein a catalogue is defined and comprises a plurality of catalogue elements that are associated with multimedia data. The catalogue elements are associated with a plurality of keywords in the catalogue that are interrelated by one or more of associative, whole-part and inheritance relationships. Thus, the structure of the catalogue includes relationships between catalogue elements and keywords that are interrelated via one or more whole-part, associative and inheritance relationships.

Applicant believes that the claimed catalogue is different from the structured index of Braden-Harder. Therefore, Applicant believes that Claims 1-2 and 23-24 are allowable over Braden-Harder.

2.   <u>Braden-Harder teaches that the structure created from grammatical relationships is essential to archiving and retrieving multimedia data.</u>

The structure defined in Braden-Harder to index multimedia data consists of grammatical relationships between words in an input. According to Braden-Harder, to archive or retrieve information using the teachings of Braden-Harder, one must first create these grammatical relationships. Without these grammatical relationships, it is not possible to archive or retrieve information using the teachings of Braden-Harder.

Thus, according to Braden-Harder, multimedia data is indexed using grammatical relationships. As stated in Braden-Harder (at col. 1, lines 30-36):

> "[t]he key word indexes of the prior art lack the grammatical structure needed to make them more descriptive. Key word phrases have no structure because the words in the phrases lack two things: 1. a function and 2. a relationship. In a natural language, (i.e., languages spoken by humans) function and relationships of the words are provided by the language grammar (grammar rules)."

Thus, according to Braden-Harder, prior art attempts provided no relationships between keywords. Further, Braden-Harder states that prior art attempts were lacking because they failed to create the grammatical relationships between words described in Braden-Harder. Without these, according to Braden-Harder, an indexing scheme is not effective. Thus, Braden-Harder describes a means for indexing wherein grammatical relationships must be formed to archive and retrieve multimedia data.

In contrast to Braden-Harder, the claimed invention does not use grammatical relationships.  The claimed invention catalogues multimedia data via catalogue elements associated with keywords that are interrelated via one or more associative, whole-part and inheritance relationships.

3.   <u>In contrast to the claimed invention, Braden-Harder teaches a matched pair that contains an index whose structure is based on grammatical relationships.</u>

Referring to Figure 1, Braden-Harder states (at col. 5, lines 52-57):

"[t]he present invention archives and retrieves information by using structured index database 125 that stores matched pairs 105.  A matched pair 105 includes two parts: 1) a segment 110 that identifies the location of the information to be archived or retrieved and 2) an associated structured index 100."

Thus, the matched pair in Braden-Harder includes a structured index. As discussed above, the structured index taught in Braden-Harder is based on grammatical relationships.  According to Braden-Harder, therefore, a matched pair contained a structured index whose structure is formed from grammatical relationships.

In contrast to the matched pair of Braden-Harder, the claimed catalogue elements uses relationships to keywords that are interrelated via associative, whole-part and inheritance relationships.  Applicant, therefore, believes that the claimed invention is allowable over Braden-Harder.

84300.914                24

4. <u>Braden-Harder does not teach, suggest or describe storing said search request or search result in a catalogue as in the claimed invention.</u>

The Examiner cites Figure 2, reference no. 298 and Figure 5, reference no. 540 in support of the notion that Braden-Harder teaches the steps of storing a search request and search result, respectively.  Applicant respectfully disagrees.

Figure 2 in Braden-Harder "shows the process of archiving multimedia data and creating a structured index for the multimedia data.  Reference no. 298 of Braden-Harder describes the step of storing a matched pair (i.e., the pointer to the multimedia data and the structured index created for the multimedia object) in a structured index database.  This process does not involve a search request or search result.  The steps of this process do not teach, suggest or describe storing the result of a search or a search request.

Figure 5 in Braden-Harder depicts a computer system using structured indexes to archive and retrieve multimedia data.  In Figure 5, reference no. 540 is labeled as "Memory Storage."  According to Braden-Harder (at col. 5, lines 58-63) memory storage is used to store the multimedia data pointer to by the segment portion of the matched pair.

Applicant therefore believes that neither the cited portions, nor any other portions, of Braden-Harder teach, suggest or describe the storing a search result or search request in a catalogue as in Claims 1-2 and 23-24.  Thus,

84300.914                    25

Applicant believes that Claims 1-2 and 23-24 are allowable over Braden-Harder.

Rejection of Claim 17 based on 35 U.S.C § 102(b)

The Examiner states that Claim 17 is rejected under 35 U.S.C. 102(b) as being anticipated by Baker et al. (U. S. Patent No. 5,428,730). The Examiner states:

> "[r]egarding Claim 17, Baker teaches a multimedia system comprising of a browser (Figure 2, #212); a text interface coupled to browser (Figure 7, #178); an indexing server coupled to a text interface (Figure 1, #86); a first media interface (Figure 2, #218); an archive server coupled to media interface (Figure 1, #16); a second media interface (Figure 2, #206); and a method player (i.e., converts media from storage to playback) (Figure 2, #208) coupled to a second media interface (Figure 2, #206)."

Applicant disagrees. Generally, Baker teaches a system for selecting different control panels for controlling the operation of a multimedia device. Baker identifies examples (at col. 7, lines 52-56) of multimedia devices as being a videodisc player and an audio device. Baker does not teach a multimedia system as in Claim 17. More specifically, Applicant believes that Claim 17 is allowable over Baker for at least the following reasons:

1.    *Baker does not teach, suggest or describe a text interface as in Claim 17;*

84300.914                             26

2.   *Baker does not teach, suggest or describe an archive server as in Claim 17;*

3.   *Baker does not teach, suggest or describe an indexing server as in Claim 17.*

Applicant provides a discussion of these reasons below.

1.   <u>Baker does not teach, suggest or describe a text interface as in Claim 17.</u>

The Examiner states that reference no. 178 of Figure 7 discloses a text interface.  Applicant respectfully disagrees.  Baker states (at col. 8, lines 17-22) that reference 178 is the functions that are performed in response to a create control screen command.  According to Baker (col. 8. lines 17-22 and Figure 7), these functions are acquiring memory for the control screen display, making the control panels for the screen and placing the control panels on the screen.

Thus, Baker's reference 178 describes functions to create a control screen containing control panels.  Baker does not teach, suggest or describe a text interface comprised of methods configured to specify a request for multimedia data.

In contrast to Baker, the text interface of Claim 17 comprises at least one class of method configured to specify a request for multimedia data. Reference no. 178 of Baker does not teach, suggest or describe a text interface as in Claim 17.  Applicant believes that there is nothing in Baker that teaches,

suggests or describes a text interface as in Claim 17.  Therefore, Applicant
believes that Claim 17 is allowable over Baker.

       2.     <u>Baker does not teach, suggest or describe an archive server as in
Claim 17.</u>

The Examiner states that reference no. 16 of Figure 1 teaches the
archive server of Claim 17.  Applicant respectfully disagrees.  Reference no. 16
is directed to a Bus Interface Controller (BIC) that, according to Baker (col. 2,
line 67 to col. 3, line 15), performs two functions.  First, according to Baker, the
BIC acts as a memory controller for accessing main memory.  Second, the BIC
provides an interface between the microprocessor's local bus and the
microprocessor's I/O bus.

Applicant believes that a BIC microprocessor component that provides
an interface to the microprocessor's main memory and provides an interface
between two bus components of a microprocessor is not the same as an
archive server configured to locate and retrieve multimedia data.

In contrast to the BIC microprocessor component of Figure 1, an
archive server of Claim 17 is configured to locate and retrieve multimedia
data using a set of IDs associated with the multimedia data.

Reference no. 16 of Baker does not teach, suggest or describe an archive
server as in Claim 17.  Applicant believes that there is nothing in Baker that

teaches, suggests or describes an archive server as in Claim 17.  Therefore,
Applicant believes that Claim 17 is allowable over Baker.

    3.    <u>Baker does not teach, suggest or describe an indexing server as in
Claim 17.</u>

The Examiner states that reference no. 86 of Figure 1 teaches the
indexing server of Claim 17.  Applicant respectfully disagrees.  According to
Baker, reference no. 86 of Figure 1 is the main memory or RAM of a
microprocessor.  As such, reference no. 86 is merely addressable storage space
of a microprocessor.  Baker states (at col. 3, lines 39-41) that main memory
(reference no. 86) holds instructions and data used by the Digital Signal
Processor (DSP 49) for processing signals.

According to Baker, therefore, main memory is not the same as an
indexing server that is configured to maintain a catalogue comprising
catalogue elements associated with keywords of the catalogue that identify
multimedia data and are interrelated by one or more of associative,
whole-part and inheritance relationships.

In contrast to the main memory described in Baker, Claim 17 comprises
an indexing server that is configured to maintain a catalogue comprising
catalogue elements associated with keywords of the catalogue that identify
multimedia data and are interrelated by one or more of associative,
whole-part and inheritance relationships.

Thus, the main memory described in Baker does not teach, suggest or describe an index server as in Claim 17.  Applicant believes that there is nothing in Baker that teaches, suggests or describes an index server as in Claim 17.  Therefore, Applicant believes that Claim 17 is allowable over Baker.

Rejection of Claims 18-22 based on 35 U.S.C § 103(a)

The Examiner states that Claims 18-22 are rejected under 35 U.S.C. 103(a) as being unpatentable over Baker et al. (U. S. Patent No. 5,428,730), and further in view of Braden-Harder (U. S. Patent No. 5,630,121).

The Examiner states that Baker does not expressly teach a database management system and an application programming interface.  The Examiner states that Braden-Harder discloses a database management system and an application programming interface.

The Examiner states that it would have been obvious to modify the teaches of Braden-Harder with the teachings of Baker to include a database management system and an application programming interface with the motivation to solve problems by providing a multimedia system with a consistent user interface which is present from different application programs and also to relieve application programmers of duplicate development effort, thereby increasing multimedia programmer productivity.

84300.914                                        30

Applicant respectfully disagrees. Applicant refers the Examiner to the above discussions of Baker and Braden-Harder. Applicant believes, at least for the reasons stated in the above discussions, that Claims 18-22 are allowable over Baker and Braden-Harder, either alone or in combination.

Rejection of Claim 14 based on 35 U.S.C § 103(a)

The Examiner states that Claim 14 is rejected under 35 U.S.C. 103(a) as being unpatentable over Braden-Harder et al. (U. S. Patent No. 5,630,121), and further in view of Carles (U. S. Patent No. 5,661,516).

The Examiner states:

Braden-Harder does not expressly teach a search cache from portion of the multimedia data and retrieving portion of the multimedia data from permanent storage, if portion of multimedia data is resident on permanent storage and is not found in the cache."

The Examiner states, however, that Carles teaches searching a local cache for multimedia data, retrieving a portion of multimedia data into local cache from a remote cache if the portion of multimedia data is resident in remote cache is not found in local cache and retrieving portion of the multimedia data into local cache from permanent storage, if portion of multimedia data is not found in local cache or remote cache.

The Examiner states that it would have been obvious to modify the teaches of Braden-Harder with the teachings of Carles with the motivation to

84300.914                              31

distribute advertising and commercial messages for on-demand consumer ordered television.

Applicant respectfully disagrees.  Applicant respectfully disagrees. Applicant refers the Examiner to the above discussion of Braden-Harder. Neither Braden-Harder nor Carles, either alone or in combination teach, suggest or describe the invention of Claim 14.  Thus, Applicant believes that Claim 14 is allowable over Braden-Harder and Carles, either alone or in combination.

Rejection of Claim 3-13 and 25-35 based on 35 U.S.C § 103(a)

The Examiner states that Claims 3-13 and 25-35 are rejected under 35 U.S.C. 103(a) as being unpatentable over Braden-Harder et al. (U. S. Patent No. 5,428,730), and further in view of Musei Vaticani ("Vaticani"), December 8, 1994.

The Examiner states that Braden-Harder does not expressly teach a system request comprised of one or more elements; storing cardinality information of one or more elements and storing conjunctivity information of one or more elements.

Regarding Claims 3 and 25, the Examiner states that Vaticani teaches a search request comprised of one or more elements (citing Page 1); storing cardinality information ("i.e., of prime importance") of one or more elements and storing conjunctivity information ("joining or combined") of one or

84300.914                               32

more elements (citing Page 2, Paragraph 1 and 7). The Examiner states that it would have been obvious to modify the teachings of Vaticani with the teachings of Braden-Harder to include a search request comprised of one or more elements; storing cardinality information of one or more elements and storing conjunctivity information of one or more elements with the motivation to a research various topics of interest in a user-friendly environment via the Internet.

Regarding Claims 4 and 26-27, the Examiner states that Vaticani teaches creating a container element (citing Page 2, Paragraph 1 and Page 7, Paragraph 1-2) and the relationship between the container element and one or more catalogue elements. The Examiner states that it would have been obvious to combine the teaches of Vaticani with the teachings of Braden-Harder with the motivation to search "A day that will live in the family" and further search "The party for freedom and democracy" if a person wants additional information from the Vaticani library.

Regarding Claim 5, the Examiner states that Vaticani teaches a catalogue ("i.e., Tiananmen, which has attribute elements, i.e., 'Quest for Freedom' or 'The Confrontation'," Page 7). The Examiner states that Vaticani does not expressly teach query operations, but Braden-Harder teaches query operations. Further, the Examiner states that it would have been obvious to modify the teachings of Vaticani with the teachings of Braden-Harder to

include a query with the motivation to archive and retrieve data by using structure indexes.

Regarding Claims 6, 9, 28 and 30-31, the Examiner states that Vaticani teaches identifying type elements and instances using a search request (citing Pages 2 and 7 "Tianamen"). The Examiner states that Vaticani does not expressly teach keywords, but Braden-Harder teaches keywords (citing col. 1, lines 14-30). The Examiner further states that it would have been obvious to modify the teachings of Vaticani with the teaching of Braden-Harder to include keywords with the motivation to use keywords as indexes to archive and retrieve multimedia images and sounds.

Regarding Claims 7, 29 and 33, the Examiner states that Vaticani teaches identifying a set type of instances that meet a set of criteria (citing Tianamen, Page 2) and identifying a second set of type instances that are subtypes of the type instances (citing "Muse Vaticani, the Honk Kong Voice of Democracy, The Loagai Research Foundation," Pages 2 and Pages 9-10). The Examiner states that it would have been obvious to modify the teaching of Braden-Harder with the teachings of Vaticani to include with the motivation to further locate critical research information to obtain essential or critical information in a search (the Examiner states that the support democracy in China is a subtype of the Muse Vaticani).

Regarding Claim 8, the Examiner states that Braden-Harder disclosed keyword instances and child keywords (citing Figure 1). The Examiner states

84300.914                                            34

that it would have been obvious to modify the teachings of Vaticani with the teachings of Braden-Harder to include a child keyword with the motivation to obtain first data contained in the database with lexical hierarchy, the database having other data related to the first data defined in a lexical hierarchy (citing Col. 11, lines 42-67 and Col. 12, lines 1-65).

Regarding Claims 10, 12, 32 and 34, the Examiner states that Vaticani teaches a plurality of person instances using a search request (citing Page 2, Muse Vaticani, paragraphs 1-4). The Examiner states that it would have been obvious to modify the teachings of Vaticani with the teachings of Braden-Harder to include a plurality of person instance using a search request with the motivation to archive and retrieve multimedia information on a computer (citing Col. 1, lines 8-10).

Regarding Claim 11, the Examiner states that the limitations of this Claim have been noted in the rejection of Claims 3-10, 12 and 25-34. above.

Regarding Claims 13 and 35, the Examiner states that Vaticani teaches a plurality of IDs (citing "different subject titles) of multimedia data (citing Page 1). The Examiner states that it would have been obvious to modify the teachings of Vaticani with the teachings of Braden-Harder to include a plurality of IDs with the motivation to archive and retrieve the information on a computer (citing Col. 1, lines 8-10).

Regarding the Vaticani reference, the Examiner cites pages and paragraphs of HTML-defined browser-generated text containing hyperlinks. The text describes political unrest in China and other topics unrelated to the claimed subject matter. Applicant is unclear as to how the text referenced by the Examiner teaches the limitations of the claims.

For example, it is unclear as to how Page 2, paragraphs 1 and 7 teach the storing of cardinality and conjunctivity or how Page 2, paragraph 1 and Page 7 paragraphs 1-2 teach creating a container element and a relationship between a container element and one or more catalogue elements. Applicant requests clarification of the Examiner's rejection of claims 3-13 and 25-35 (i.e., paragraphs 14-24 of Paper No. 6).

Applicant believes, however, that discussion of the Vaticani reference is rendered moot given the above discussion of the Claims 1 and 23 with reference to Braden-Harder. Applicant believes that Claims 3-13 and 25-35 are allowable for at least the reasons set forth in the above discussion of Braden-Harder. Accordingly, Applicant believes that Claims 3-13 and 25-35 are allowable over Braden-Harder and Vaticani, either alone or in combination.

<u>Conclusion</u>

For the foregoing reasons, Applicant contends that none of the references cited, either alone or in combination, teach, describe, or suggest the

84300.914                                    36

present invention.  Applicant contends that pending claims 1-14 and 17-36 are allowable.

Respectfully submitted,

Hecker & Harriman

Date: _3/5/98_

By: _____

J. D. Harriman II
Reg. No. 31,967

2029 Century Park East
Suite 1600
Los Angeles, CA 90067
(310) 286-0377

File No.:  84300.914

CERTIFICATE OF MAILING

This is to certify that this correspondence is being deposited with the United States Postal Service with sufficient postage as First Class Mail in an Envelope addressed to: Assistant Commissioner for Patents, Washington, D.C. 20231 on:

March 5, 1998

_____   3-5-98
Signature                   Date

Lillian E. Rodriguez

| *Notice of Allowability* | Application No. 08/678,727 | Applicant(s) Samuel GUSTMAN |
|---|---|---|
| | Examiner DIANE MIZRAHI | Group Art Unit 2771 |

All claims being allowable, PROSECUTION ON THE MERITS IS (OR REMAINS) CLOSED in this application. If not included herewith (or previously mailed), a Notice of Allowance and Issue Fee Due or other appropriate communication will be mailed in due course.

☒ This communication is responsive to *Amendment dated March 9, 1998* .

☒ The allowed claim(s) is/are *1-14 and 17-36, renumbered 1-34* .

☐ The drawings filed on _____ are acceptable.

☐ Acknowledgement is made of a claim for foreign priority under 35 U.S.C. § 119(a)-(d).

    ☐ All ☐ Some* ☐ None of the CERTIFIED copies of the priority documents have been

        ☐ received.

        ☐ received in Application No. (Series Code/Serial Number) _____ .

        ☐ received in this national stage application from the International Bureau (PCT Rule 17.2(a)).

    *Certified copies not received: _____

☐ Acknowledgement is made of a claim for domestic priority under 35 U.S.C. § 119(e).

A SHORTENED STATUTORY PERIOD FOR RESPONSE to comply with the requirements noted below is set to EXPIRE **THREE MONTHS** FROM THE "DATE MAILED" of this Office action. Failure to timely comply will result in ABANDONMENT of this application. Extensions of time may be obtained under the provisions of 37 CFR 1.136(a).

☐ Note the attached EXAMINER'S AMENDMENT or NOTICE OF INFORMAL APPLICATION, PTO-152, which discloses that the oath or declaration is deficient. A SUBSTITUTE OATH OR DECLARATION IS REQUIRED.

☒ Applicant MUST submit NEW FORMAL DRAWINGS

    ☒ because the originally filed drawings were declared by applicant to be informal.

    ☐ including changes required by the Notice of Draftsperson's Patent Drawing Review, PTO-948, attached hereto or to Paper No. _____ .

    ☐ including changes required by the proposed drawing correction filed on _____ , which has been approved by the examiner.

    ☐ including changes required by the attached Examiner's Amendment/Comment.

    **Identifying indicia such as the application number (see 37 CFR 1.84(c)) should be written on the reverse side of the drawings. The drawings should be filed as a separate paper with a transmittal letter addressed to the Official Draftsperson.**

☐ Note the attached Examiner's comment regarding REQUIREMENT FOR THE DEPOSIT OF BIOLOGICAL MATERIAL.

Any response to this letter should include, in the upper right hand corner, the APPLICATION NUMBER (SERIES CODE/SERIAL NUMBER). If applicant has received a Notice of Allowance and Issue Fee Due, the ISSUE BATCH NUMBER and DATE of the NOTICE OF ALLOWANCE should also be included.

**Attachment(s)**
    ☐ Notice of References Cited, PTO-892
    ☐ Information Disclosure Statement(s), PTO-1449, Paper No(s). _____
    ☐ Notice of Draftsperson's Patent Drawing Review, PTO-948
    ☐ Notice of Informal Patent Application, PTO-152
    ☐ Interview Summary, PTO-413
    ☒ Examiner's Amendment/Comment
    ☐ Examiner's Comment Regarding Requirement for Deposit of Biological Material
    ☒ Examiner's Statement of Reasons for Allowance

Serial Number: 08/678,727                                         Page 2

Art Unit: 2771

## Examiner's Amendment

1.   Claims 1-14 and 17-36 are presented for examination.

2.   Applicant's arguments filed March 3, 1998 have been fully considered and they are deemed to be persuasive.

3.   An examiner's amendment to the record appears below.  Should the changes and/or additions be unacceptable to applicant, an amendment may be filed as provided by 37 CFR 1.312.  To ensure consideration of such an amendment, it MUST be submitted no later than the payment of the issue fee.

4.   The application has been amended as follows:

"Claims 15 and 16" have been deleted as per Amendment dated March 3, 1998 and as per telephone conversation dated November 5, 1997.

5.   Claims 1-14 and 17-36 are allowed.  Renumbered claims are 1-34.

6.   The following is an examiner's statement for reasons for allowance:

Applicant's particular method and system for accessing multimedia data having a plurality of catalogue elements associated with catalogue keywords being interrelated by one or more associative, whole-part and inheritance relationships, searching, browser and indexing the server configured to maintain

Serial Number: 08/678,727                                    Page 3

Art Unit: 2771

catalogue elements, and having the interface configured to

transmit set of identifiers associated with multimedia data, was

not suggested over prior art.

    These limitations in conjunction with the other limitations

of the dependent and independent claims were not shown by, would

not have been obvious over, nor would have been fairly suggested

by the prior art made of record.

6.   Any comments considered necessary by applicant must be

submitted no later than the payment of the issue fee and, to

avoid processing delays, should preferably accompany the issue

fee. Such submissions should be clearly labeled "Comments on

Statement of Reasons for Allowance.

### ***Drawings***

7.   Since allowance subject matter has been indicated, Applicant

is encouraged to submit, underline formal drawings in response to this

Office action.  The early submission of formal drawings will

permit the office to review the drawings for acceptability and to

resolve any informalities remaining therein before the

application is passed to issue.  This will avoid possible delay

in the issue process.

8.   As allowable subject matter has been indicated, Applicant's

response must either comply with all formal requirements or

Serial Number: 08/678,727                                           Page 4

Art Unit: 2771

specifically traverse each requirement not complied with.  See 37

CRF 1.111(b) and MPEP section 707.07(a).

### *Conclusion*

   Any inquiry concerning this communications from the examiner

should be directed to Diane Mizrahi whose telephone number is

(703) 305-3806.  The examiner can normally be reached on Monday

to Thursday from 7:30 AM. to 5:00 PM.

9.   If any attempt to reach the examiner by telephone is

unsuccessful, the examiner's supervisor, Thomas Black can be

reached on (703) 305-9707.  The fax phone number for this group

is (703) 308-9731.


                                        WAYNE AMSBURY
                               PRIMARY PATENT EXAMINER


Diane Mizrahi
Patent Examiner
March 26, 1998