HON. STEPHEN G. LARSON (Ret.)
*slarson@larsonllp.com*
555 S. Flower Street
Suite 4400
Los Angeles, CA 90071
Tel: (213) 436-4888
Fax: (213) 623-2000

**SPECIAL MASTER**

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA
# SOUTHERN DIVISION—SANTA ANA

| | |
|---|---|
| PRESERVATION TECHNOLOGIES LLC,<br><br>Plaintiff,<br><br>v.<br><br>MINDGEEK USA, INC., ET AL.<br><br>Defendants. | CASE NO. 2:17-cv-08906-DOC-JPR<br><br>Honorable David O. Carter<br>Courtroom 9D<br><br>**SPECIAL MASTER'S REPORT AND RECOMMENDATION NO. 3 RE: DEFENDANTS' MOTION FOR PROTECTIVE ORDER**<br><br>Jury Trial Demanded |

## I. INTRODUCTION

Plaintiff Preservation Technologies LLC ("Preservation Tech") seeks to depose a corporate representative of Defendants MindGeek USA, Inc. and its affiliates ("MindGeek") about the source code underlying this patent dispute. Contending that the requested topics for the deposition are unduly broad and burdensome, MindGeek moves for a protective order to limit the scope of questioning. Preservation Tech counters that it has properly cabined its inquiries, and therefore, MindGeek's burden claim is unfounded.

After reviewing the parties' briefing and supporting papers, and after hearing oral argument on October 5, 2020, the Special Master finds as follows.

## II. FACTUAL BACKGROUND

Preservation Tech sued MindGeek for infringing patents related to video streaming services. As part of its discovery production, MindGeek provided Preservation Tech with 2.4 terabytes of source code. That data production comprises 7.3 million files spread over 1.1 million folders. (Bhatia Decl. ¶ 8; Exh. C at 7.)

On August 25, 2020, Preservation Tech served MindGeek with a notice of deposition under Federal Rule of Civil Procedure 30(b)(6) requesting that MindGeek prepare a corporate representative to testify about 105 topics. MindGeek wrote to Preservation Tech and explained that it viewed the proposed scale of questioning as excessively broad and burdensome. Following back and forth emails and a meet and confer on September 3, 2020, Preservation Tech agreed to seek testimony about only ten topics relating to MindGeek's source code.

MindGeek maintained that the remaining topics would still require unduly burdensome preparation. After discussions about further limiting the scope of the 30(b)(6) deposition reached an impasse, MindGeek filed this motion for a protective

order on September 15, 2020.  Preservation Tech filed its opposition on September 22, 2020, and MindGeek replied on September 25, 2020.

## III. DISCUSSION

### A. Standard of Review

Under Rule 26, "Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense . . . ." Fed. R. Civ. P. 26(b)(1). "Relevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence." *Id.*

But the right to discover relevant evidence has limits.  The Court must curtail the scope of discovery if it determines that:

> (i) the discovery sought is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive; (ii) the party seeking discovery has had ample opportunity to obtain the information by discovery in the action; or (iii) the burden or expense of the proposed discovery outweighs its likely benefit, considering the needs of the case, the amount in controversy, the parties' resources, the importance of the issues at stake in the action, and the importance of the discovery in resolving the issues.

Fed. R. Civ. P. 26(b)(2)(C).

The party opposing discovery bears the burden of showing that the Court should restrict a discovery request.  *See DirectTV, Inc. v. Trone*, 209 F.R.D. 455, 458 (C.D. Cal. 2002).

Rule 26(c) provides that "a party or any person from whom discovery is sought may move for a protective order." Fed. R. Civ. P. 26(c)(1); *see also Bowers v. Mortg. Elec. Registration Sys., Inc.*, 2011 WL 6013092, at *3 (D. Kan. Dec. 2, 2011) ("A party seeking to preclude a Rule 30(b)(6) deposition may apply to the court for a protective order under Federal Rule of Civil Procedure 26(c)(1).").  The Court "may, for good cause, issue an order to protect a party or person from annoyance,

embarrassment, oppression, or undue burden or expense . . . ." Fed. R. Civ. P. 26(c)(1).

### B. Analysis

Rule 30(b)(6) provides that, "[i]n its notice or subpoena, a party may name as the deponent [an organization] and must describe with reasonable particularity the matters for examination. The named organization must then designate one or more officers, directors, or managing agents, or designate other persons who consent to testify on its behalf[.]" Fed. R. Civ. P. 30(b)(6). "The corporation has a duty to educate its witnesses so they are prepared to fully answer the questions posed at the deposition." *Bowoto v. ChevronTexaco Corp.*, No. C 99-02506 SI, 2006 WL 294799, at *1 (N.D. Cal. Feb.7, 2006) (citing *In re Vitamins Antitrust Litig.*, 216 F.R.D. 168, 172 (D.D.C. 2003)).

Rule 30(b)(6) thus imposes reciprocal obligations on proponent and deponent: the proponent must specify which subject matters it intends to inquire into, and the deponent must take affirmative steps to learn about those topics. *See Memory Integrity, LLC v. Intel Corp.*, 308 F.R.D. 656, 660 (D. Or. 2015). Because "Rule 30(b)(6) places substantial responsibilities and burdens on the responding corporate party," *id.* at 661, for the rule "to effectively function, the requesting party must take care to designate, with painstaking specificity, the particular subject areas that are intended to be questioned, and that are relevant to the issues in dispute." *Prokosch v. Catalina Lighting, Inc.*, 193 F.R.D. 633, 638 (D. Minn. 2000). "Rule 30(b)(6) is not designed to be a memory contest." *Great Am. Ins. Co. of N.Y. v. Vegas Const. Co., Inc.*, 251 F.R.D. 534, 538 (D. Nev. 2008).

Preservation Tech seeks testimony from MindGeek under Rule 30(b)(6) about ten topics. MindGeek raises the following four arguments against those topics.

1. Undue Burden

For each proposed deposition topic, MindGeek argues that adequately preparing a witness would be "impossibly burdensome." (Mtn. at 4–5; Exh. I.) Preservation Tech raises general arguments against the protective order, but it has not provided topic-by-topic responses to MindGeek's objections. (*See* Opp'n 56.)

*Topic No. 1:* Preservation Tech's first topic requests testimony about "[t]he contents of the Source Code computer(s) that [MindGeek] made or will make available to Preservation, including which files, folders, or modules relate to which Accused Websites and Accused Systems . . . ." (Exh. A at 9.) Recall that MindGeek produced 2.4 terabytes of source code, containing 7.3 million files within 1.1 million folders. (Bhatia Decl. ¶ 8; Exh. C at 7.)

Read literally, Topic No. 1 would require the deponent to know each file's "relat[ion] to [the] Accused Websites and Accused Systems," how each file "was selected for placement on the [produced] computer," and all changes to the contents of those files. "[I]t is simply impractical to expect Rule 30(b)(6) witnesses to know the intimate details of everything." *Fed. Ins. Co. v Delta Mech. Contractors, LLC*, 2013 WL 1343528, at *4 (D.R.I. Apr. 2, 2013). That rings especially true here because Preservation Tech has all of MindGeek's source code and should be able to identify at least some general categories of code to limit the deposition. Because learning enough to discuss each file, folder, and module's role within the enormous code base would require painstaking preparation, Topic No. 1 imposes an undue burden. *See McCormick-Morgan, Inc. v. Teledyne Indus. Inc,* 134 F.R.D. 275, 286–88 (N.D. Cal. 1991), *vacated on other grounds*, 765 F. Supp. 611 (N.D. Cal. 1991) (holding that when a Rule 30(b)(6) topic calls for testimony so granular that "no human being . . . could reliably and completely set forth [the] material," the topic should not be pursued in deposition).

*Topic No. 2:*  Here, Preservation Tech requests testimony about MindGeek's "efforts to locate, collect, and produce Source Code in connection with This Litigation." (Exh. A at 9.)  MindGeek labels that request unduly burdensome, but its argument supporting that contention fails to address burden. (*See* Exh. I at 5–6.)  Rather, MindGeek recounts that it has already produced its source code and that it helped restore a portion of data inadvertently deleted by Preservation Tech's expert.  Those apparent non-sequiturs form no basis for finding Topic No. 2 too burdensome.  Simply, MindGeek does not set forth any persuasive argument establishing that topic No. 2 is overly burdensome.

*Topic No. 3:*  Preservation Tech seeks testimony about "[p]otentially responsive Source Code that has not yet been produced, including the reason for non-production." (Exh. A at 9.)  Here too MindGeek argues that the requested testimony is burdensome because it has already produced its source code.  Yet MindGeek provides no authority for avoiding relevant discovery on that basis.  *Cf. Pers. Audio, LLC v. Apple, Inc.*, No. 9:09-cv-111, 2010 WL 9499679, at *3 (E.D. Tex. June 1, 2010) (compelling the defendant to respond to interrogatories about how its products work even though it produced relevant source code to the plaintiff).

*Topic No. 4:*  This topic asks MindGeek to explain why it produced source code dated after Preservation Tech's patents expired and "whether and to what extent [MindGeek] can stipulate that the Source Code is representative of" the accused code during the patents' effective period. (Exh. A at 9–10.)  The parties dispute whether MindGeek properly produced all its source code in response to Preservation Tech's request. (Reply at 2; Opp'n at 5–6.)  Regardless, MindGeek provides no reason for concluding that preparing testimony about the relevancy of its current code to past iterations of its code imposes an undue burden. (*See generally* Exh. I at 6–7.)  Thus,

having failed to set forth specific reasons why Topic No. 4 imposes an undue burden, the Special Master will not sustain MindGeek's burden objection here.

*Topic No. 5:* Preservation Tech requests testimony about "[c]hanges, if any, to [MindGeek's] Source Code . . . relating to any Accused Systems . . . from December 11, 2011 through the date of service of this Notice, including how and when any changes were made and the reasons for such changes." (Exh. A at 10.) In response, MindGeek contends that "it is simply impossible and not proportional to prepare a witness(es) to identify" all changes to the enormous code base underlying MindGeek's systems over a nine-year period. (Mtn. at 7–8.) MindGeek's argument is well-taken.

By its terms, Topic No. 5 would require a deponent to know about the macro changes to general system architecture, the micro changes to individual lines of code, and everything in between. Adequately familiarizing corporate deponents with all the ins and outs of 7.3 million files would demand exorbitant preparation. Assuming any deponent could master that knowledge, the unrestrained request would require countless hours of preparation. Preservation Tech makes no showing that such intrusive discovery is proportional to the needs of this case, nor does Preservation Tech suggest that it could not more specifically identify the source code changes that it wishes to probe. *See Apple Inc. v. Samsung Elecs. Co.*, No. C 11-1846 LHK (PSG), 2012 WL 1511901, *2 (N.D. Cal. Jan. 27, 2012) (a broad 30(b)(6) notice "render[s] unworkable the obligation of the responding party to make a conscientious, good-faith effort to designate knowledgeable persons . . . and to prepare them to fully and unevasively answer questions about the designated subject matter" (internal quotation and citation omitted)).

*Topic No. 16:* This request asks for testimony about the steps that MindGeek has taken, and continues to take, "to search for, locate, preserve, and produce

Documents and Source Code that are potentially responsive to Plaintiff's requests or are otherwise relevant to This Litigation . . . ." (Exh. A at 11–12.) The notice further instructs that MindGeek's deponent "should at least know [1] the names and job positions of the persons responsible for conducting [MindGeek's] search, [2] the names and job positions of the persons whose electronic files, hard copy files, and individual computer work stations were searched and why these custodians were chosen, [3] the MindGeek computers, servers, and computer databases that were searched, [4] how the search was conducted, [5] what the search entailed (e.g. search terms, search methods, and search time periods), [6] the dates when the search was carried out, and [7] the cities in which the computers, servers, computer databases, and computer work stations that [MindGeek] searched physically are located."

MindGeek contends that this question is unduly burdensome because there are effectively seven discrete subparts nested within the topic. (Mtn. at 9.) Yet MindGeek cites no authority suggesting that the Court should deny relevant discovery for failure to optimally delineate the categories of information sought. *Compare Apple Inc.*, 2012 WL 1511901, at *2 (issuing a protective order for plaintiff as a result of defendant's 229-topic 30(b)(6) notice and holding that preparing corporate witnesses for deposition "becomes less realistic and increasingly impossible as the number and breadth of noticed subject areas expand").

MindGeek also argues that seeking information about "Documents" in addition to information about "Source Code" (as defined at Exh. A ¶¶ 3, 18) is premature given the schedule for discovery. (Mtn. at 5.) In its opposition, however, Preservation Tech confirmed that "it is only seeking a deposition on the topics as they relate to source code at this time." (Opp'n at 6; *see also* Hr'g Tr. at 9 (Preservation Tech stated that "at meet and confer we made clear we're not looking for a witness to testify about all documents, that at this time we need to limit this particular deposition to source code

topics only.")) In light of Preservation Tech's concession, Preservation Tech shall limit its questioning to matters related to Source Code.

*Topic No. 17:* This topic would require MindGeek's deponent to know the "[p]rocesses and procedures . . . use[d] to store, catalog, control, update, and disseminate Documents and Source Code regarding any of the [104 other] topics in this Notice. . . ." (Exh. A at 12.) Given the capacious definitions assigned to Documents and Source Code and the breadth of the other topics, adequately preparing would unduly strain any deponent's abilities. Preservation Tech agreed to limit its 105 noticed topics to ten topics. Incorporating by reference the 95 withdrawn topics renders Topic No. 17 overbroad and "facially excessive." *Apple Inc.*, No. C 11-1846 LHK PSG, 2012 WL 1511901, at *2. Any meaningful attempt to designate and prepare corporate witnesses to discuss the "processes and procedures" for documents and source code relating to 104 areas of inquiry would require MindGeek to devote hours upon hours reviewing documents with corporate deponents and ensuring their comprehension of the information contained therein. The amount of time diverted and money spent to prepare for such an expansive topic would likely hamper MindGeek's daily operations. That burden is not proportional to the demands of the case, especially when Preservation Tech does not argue that it cannot craft more targeted topics.

*Topic No. 22:* Preservation Tech seeks testimony about "[t]he identity, location, custodian, and format of all Documents relating to any version control systems for Source Code used in the operation of each Accused System." (Exh. A at 13.) When asked at oral argument, Preservation Tech clarified that it really seeks answers to a set of narrower questions. (Hr'g Tr. at 5–6.) Specifically, Preservation Tech explained that it seeks information about: (1) the documentation that MindGeek has provided about using its version control systems; (2) the organization of the

version control systems; and (3) general questions about how the version control systems work.  Preservation Tech may ask about those more specific subjects.  Fed. R. Civ. P. 26(c)(1)(D) (upon good cause shown, the court may "limit[] the scope of disclosure or discovery to certain matters"); *Doubt v. NCR Corp.*, No. C 09-5917 SBA, 2011 WL 5914284, at *2–3 (N.D. Cal. Nov. 28, 2011) (limiting the scope of a deposition notice which contained fifty-six broad subject matters).

*Topic No. 35:*  This topic requires MindGeek to identify the "geographic location(s)" where MindGeek develops, produces, manufactures, tests, uses, administers, controls, or installs the accused systems and websites.  (Exh. A at 18–19.)  MindGeek objects to this topic as overly broad because it uses the following "undefined" terms: "develop, produce, manufacture, test, use, administer, control, or install . . . including any components, parts, and/or features . . . and the origins of software updates . . . including where You compile the Source Code and/or host the servers that contain Source Code . . . ."  (Exh. I.)  Aside from labeling these terms as unduly vague, MindGeek fails to otherwise develop this argument adequately.  *Swenson v. GEICO Cas. Co.*, No. 219CV01639JCMNJK, 2020 WL 4815035, at *2 (D. Nev. Aug. 19, 2020) ("The party seeking issuance of a protective order bears the burden of persuasion.").  Regardless, MindGeek does not explain why the quoted phrases require further definition or why the ordinary dictionary definition will not suffice.  *See Adobe Sys. Inc. v. Christenson*, No. 2:10-CV-00422-LRH, 2011 WL 540278, at *4 (D. Nev. Feb. 7, 2011) (looking to "[c]ommon or ordinary definitions" in the absence of defined terms).  Accordingly, the Special Master finds that Topic No. 35 does not impose an undue burden on MindGeek.

*Topic No. 43:*  Here, Preservation Tech requests testimony about MindGeek's "Source Code, technical specifications, marketing requirements, engineering requirements, version histories, and modifications to software and hardware relating to

the Accused Systems, including all prior versions thereof since at least December 11, 2011." (Exh. A at 20.) This unbounded request appears approximately coterminous with all evidence in MindGeek's possession about source code that pertains to this suit. As an illustration, this topic would require MindGeek to prepare witnesses to answer any questions related to source code for the 2.4 terabytes of code underlying its more than 52 accused websites over the last nine years. Few pertinent questions about MindGeek's source code would *not* be included within this topic. A deposition topic lacking all metes and bounds is facially overbroad and unduly burdensome. *See Bowers*, 2011 WL 6013092, at *6 (issuing a protective order for a 30(b)(6) notice with 22 "wide-ranging and broad nature" deposition topics because "when the notice is overbroad, the responding party is unable to identify the outer limits of the areas of inquiry noticed, and . . . compliance with the deposition notice becomes impossible"); *Dealer Comput. Servs., Inc. v. Curry*, 2013 WL 499520, at *2 (S.D.N.Y. Feb. 7, 2013) ("A [30(b)(6)] deposition is not a quiz, nor is it the most practical way to obtain [all types of] information.").

    *Specific Harm:* Preservation Tech argues that the Court should reject the protection motion in full because MindGeek fails to meet "the burden of showing specific prejudice or harm will result if no protective order is granted." (Opp'n at 4 (quoting *Phillips ex rel. Estates of Byrd v. Gen. Motors Corp.*, 307 F.3d 1206, 1210–11 (9th Cir. 2002)). But MindGeek has alleged particular burdens that it would face in preparing a witness for each topic. (*See generally* Exh. I.) MindGeek has thus adequately set forth the burden that preparing for the 30(b)(6) deposition would entail. *Compare Indep. Living Ctr. Of So. Cal. v. City of Los Angeles*, 296 F.R.D. 632, 637 (C.D. Cal. 2013) (rejecting "generalized objections of burdensomeness" when the movant merely labeled the requested discovery burdensome and cited the number of requests without otherwise advancing specific arguments).

Preservation Tech correctly points out that "MindGeek offers no evidence to support its assertions [about burden]." (Opp'n at 6.) However, Preservation Tech cites no authority establishing that a party resisting discovery must support its contentions with affidavits or declarations. The Special Master has reviewed the nature and scope of the topics, the arguments and cases cited by the parties, additional case law regarding burden and 30(b)(6) depositions, and the oral arguments made by the parties during the hearing in making the recommendations above.

*Definition Objections:* MindGeek also contends that several of Preservation Tech's specially defined terms are too broad. Specifically, MindGeek argues that "(Accused Websites [is] overbroad [for] including 'all other websites operated by or on behalf of the MindGeek Organization that use similar systems, platforms, and/or protocols'); . . . (Accused Systems definition is 22 lines long); . . . (Source Code is overbroad)." Aside from this sentence, MindGeek fails to sufficiently develop this argument. *See Hibbs v. Dep't of Hum. Resources*, 273 F.3d 844, 873 n.34 (9th Cir. 2001) (courts need not consider argument "too undeveloped to be capable of assessment"). Accordingly, the Special Master does not find that Preservation Tech's definitions are "too broad."

* * *

In sum, the Special Master recommends finding Topic Nos. 1, 5, 17, and 43 unduly burdensome, finding Topics Nos. 2, 3, 4, 16, and 35 appropriately limited requests, and finding Topic No. 22 permissible to the extent laid out above.

### 2. Lack of Limiting Date Range

Relatedly, MindGeek argues that the noticed deposition topics are overbroad because each topic requests information through the present (unless the topic specifies a different date range). (Mtn. at 7.) MindGeek contends that seeking discovery of

11

information past the expiration of the disputed patents (in 2016) renders the requested discovery unduly burdensome.

At oral argument, Preservation Tech explained that it planned to ask about present source code only so that it can "separate source code after the infringement period [from] source code for time periods that are relevant." (Hr'g Tr. at 16.) With that restriction in place, Preservation Tech may make limited inquiry into source code created after the disputed patents' expiration.

### 3. Burden Shifting

MindGeek argues that Topic Nos. 1, 5, and 17 would improperly require it to identify the portions of its own source code that allegedly infringe the disputed patents. *See Int'l Bus. Machs. Corp. v. The Priceline Grp. Inc.*, Case No. 15-137, 2016 WL 6305981, at *1 (D. Del. Sept. 29, 2016) ("[W]here a plaintiff has access to the source code and the task of requiring a defendant to sift through its source code to identify accused features would be unduly burdensome, courts have denied requests like IBM's here."). But the factual premise of MindGeek's objection is faulty: Topic Nos. 1, 5, and 17 do not ask MindGeek to specify the code that MindGeek believes may infringe Preservation Tech's patents. Rather, those topics request testimony about broad categories of source code with various different commonalities. Infringing code might be among the code responsive to the broad requests, but Topic Nos. 1, 5, and 17 do not require MindGeek to identify code on the basis of whether it may infringe Preservation Tech's patents. Because those topics do not directly require identifying infringing code, the topics do not improperly shift the burden of identifying such code.

### 4. Privileged Information and Legal Conclusions

Citing Topic Nos. 2 and 3, MindGeek contends that Preservation Tech requests testimony about materials shielded by attorney-client privilege. Those topics seek

testimony about MindGeek's "efforts to locate, collect, and produce Source Code" and "[p]otentially responsive Source Code that has not yet been produced," respectively. But no general rule precludes inquiring into "what efforts [MindGeek has] undertaken to collect and preserve applicable information." *In re eBay Seller Antitrust Litig.*, No. C 07-01882 JF (RS), 2007 WL 2852364, at *1 (N.D. Cal. Oct. 2, 2007). To the extent Preservation Tech seeks testimony about specific communications covered by attorney-client privilege, MindGeek may raise objections as appropriate during the deposition. *See Dominguez v. City of Los Angeles*, No. CV 17-4557-DMG (PLAx), 2018 WL 6332279, at *4 (C.D. Cal. May 24, 2018) ("[T]he Court notes that, as set forth above, an attorney can instruct 'a deponent not to answer [] when necessary to preserve a privilege . . . .'") (citation omitted).

MindGeek also argues that Topic Nos. 4 and 16 improperly call on the deponent to make a binding stipulation "on the fly" by seeking testimony about whether source code is "representative of the Accused Systems or Accused Websites during the Relevant Infringement Period." (Mtn. at 6.) Yet MindGeek's witness does not need to stipulate about this "on the fly." MindGeek provides no reason suggesting that its witness cannot prepare to answer whether certain code is representative.

## IV. CONCLUSION

The Special Master recommends GRANTING the protective order against Topic Nos. 1, 5, 17, and 43, DENYING the protective order against Topics Nos. 2, 3, 4, 16, 22, and 35, MODIFYING Topic No. 22 to limit its scope, as set forth above. The Special Master further recommends MODIFYING the Notice of Deposition generally to limit questioning about source code created after the disputed patents' expiration. Specifically, Preservation Tech may ask about present source code so long as the questioning is intended to "separate source code after the infringement period [from] source code for time periods that are relevant." (Hr'g Tr. at 16.)

**IT IS SO RECOMMENDED**

Date: October 19, 2020            _____
                                  Hon. Stephen G. Larson (Ret.)
                                  Special Master